UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALBERT PRESSLEY WILSON, ) | Civil Action No.: 4:05-cv-3597-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLINA POWER & LIGHT ) | |
| COMPANY d/b/a Progress Energy ) | |
| Carolinas, Inc., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I. INTRODUCTION

Plaintiff, who is proceeding pro se, asserts claims under the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA) and Title VII. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 94). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because the pending motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on December 28, 2005, against Progress Energy Service Co., LLC (Progress Energy), along with a Motion for Leave to Proceed In Forma Pauperis. In his original Complaint, Plaintiff asserted that he was wrongfully discharged. The case came before the undersigned pursuant to 28 U.S.C. § 1915(e)(2)(B) for a pre-service review. A Report and Recommendation (Document # 8) was issued on January 18, 2006, in which the undersigned

recommended that the case be dismissed for lack of diversity jurisdiction and failure to present a federal question. On January 27, 2006, Plaintiff filed an Objection (Document # 11) to the Report and Recommendation and attached a copy his Charge of Discrimination, dated June 2, 2005, in which he asserts claims under Title VII, the ADEA, and the ADA, a copy of a letter Plaintiff received from the South Carolina Human Affairs Commission (SCHAC), dated June 9, 2005, and a copy of the Right to Sue letter from the Equal Employment Opportunity Commission (EEOC), dated December 8, 2005.

On February 6, 2008, the district judge entered an Order (Document # 12) declining to adopt the Report and Recommendation based on the additional documents submitted by Plaintiff with his Objection. Thereafter, on February 8, 2008, the undersigned issued an Order (Document # 16) authorizing service of process. Progress Energy was served February 29, 2008.

Progress Energy filed a Motion to Dismiss or for a More Definite Statement (Document # 31), in which it asserted that Plaintiff's original Complaint failed to state a claim upon which relief could be granted under either state law or federal law and that Plaintiff had named the wrong defendant. Thereafter, Plaintiff filed a Motion to Amend his Complaint (Document # 39) to change the Defendant to Carolina Power and Light Company d/b/a Progress Energy Carolinas, Inc. (CP&L) and to add causes of action pursuant to the ADEA, the ADA, and Title VII. A Consent Order (Document # 49) was filed on August 22, 2008, granting the Motion to Amend and finding as moot the Motion to Dismiss.

Defendant filed a Motion to Dismiss and to Strike (Document # 59) on September 23, 2008. The district judge adopted the Report and Recommendation of the undersigned and granted in part and denied in part the Motion to Dismiss and Strike (see Document # 74). Specifically, the district

judge struck the portions of the Amended Complaint that referenced the rulings by the Employment Security Commission and dismissed all claims raised in the Amended Complaint except for Plaintiff's claims of age, race and disability discrimination surrounding his termination.

Defendant filed the present Motion for Summary Judgment (Document # 94) on June 4, 2009.

**III.  FACTS**

Plaintiff, an African-American male, born December 26, 1953, began working for Carolina Power & Light (CP&L) in 1977. Plaintiff Dep. at 9:13-19; 16:20-23 (attached as Ex. 1 to Defendant's Motion). He became a first-class electrician in June of 1983 and held that position throughout the course of his employment. Id. at 20:7-17; 22:20-22.

As a First Class Electrician, Plaintiff was responsible for constructing and repairing transmission and distribution substations. Id. at 20:24 – 22:19; Job Summary (attached as Ex. 2 to Defendant's Motion). Plaintiff avers that he received satisfactory ratings on all job performance appraisals, was awarded the CP&L safe driving award from 1978-2003 and the CP&L safety award from 1978-2003 for no accidents. Plaintiff Aff. at p. 3. He was up-to-date with all required training and certification. Id.

Plaintiff's job was physically demanding, and it required heavy lifting, climbing, and digging. Plaintiff Dep. at 20:24-22:13; Job Summary. From February 5, 2004, until March 8, 2004, Plaintiff was out of work on short-term disability for knee surgery. Pee Dee Orthopaedic Medical Record (attached as Ex. F to Plaintiff's Response). On August 17, 2004, Plaintiff's doctor wrote a note stating "Albert has severe degenerative joint disease of both knees. He will not be able to climb or do excessive walking. Thank you." McLeod Family Medicine Medical Record (attached as Ex. C

to Plaintiff's Response).

Plaintiff's job also required the operation of large trucks, which required the possession of a Commercial Drivers License (CDL). Plaintiff Dep. at 20:24-21:4, 22:23-23:17; Job Summary. Because he held a CDL and operated a commercial motor vehicle in connection with his employment, Plaintiff was subject to Federal Motor Carrier Safety Administration (FMCSA) standards and related Department of Transportation (DOT) regulations, which, among other things, require random drug testing for persons who are required to possess a CDL. Plaintiff Dep. at 23:18 –24:1; Gregory Aff. ¶¶ 3, 5-6 (attached as Ex. 3 to Defendant's Motion); see also 49 C.F.R. § 40.1 et seq., § 382.101 et seq. To satisfy and comply with those standards and regulations, CP&L instituted the DOT Motor Carrier Safety Drug and Alcohol Program (the DOT Policy). Plaintiff Dep. at 24:2–6; Gregory Aff. ¶ 3; the DOT Policy at Part 1.1 (attached as Exhibit 4 to Defendant's Motion). Plaintiff was subject to the provisions of the DOT Policy, and he received training and training materials in connection with the DOT Policy. Plaintiff Dep. at 23:18–24:24; Training Receipt (attached as Ex. 5 to Defendant's Motion); Gregory Aff. ¶ 5.

CP&L employees, such as Plaintiff, who are subject to the DOT Policy are subject to random drug testing four times, on dates unknown to the employees, throughout the course of a year. Gregory Aff. ¶ 6. On each occasion, each employee has an equal chance of being randomly selected for a drug test. Id. If an employee randomly is selected for a drug test, the employee is not excused from other random drug tests; accordingly, each employee could be selected for between zero and four random drug tests during the course of any single year. Id.

CP&L retains an unaffiliated Third-Party Administrator (TPA) to administer the drug and alcohol testing that is implemented under the DOT Policy. Gregory Aff. ¶ 7. In 2004, the TPA was

Automatic Data Processing, Inc. (ADP). Id. CP&L provided ADP with the names of all employees who were subject to the DOT Policy, but it did not provide ADP with information concerning their race, age, sex, or disability status. Id. ADP was responsible, among other things, for randomly selecting CP&L employees for drug testing under the DOT Policy, conducting the drug testing, and providing a qualified Medical Review Officer ("MRO") to review, interpret, and report the test results. Id.

In 2004, Plaintiff was randomly chosen to be tested three times, on January 12, 2004, May 17, 2004, and December 13, 2004. Plaintiff Aff. at p. 3-4 (attached as an Exhibit to Plaintiff's Response). On December 13, 2004, ADP administered the test and provided the test results to an independent MRO selected by ADP, Dr. Joseph A. Thomasino, who was neither an employee nor an agent of CP&L or its affiliates. Plaintiff Dep. at 27:25–28:3, 29:7–13, 36:23–37:18; Gregory Aff. ¶ 10.

After determining that Plaintiff had tested positive for opiates, specifically codeine, Dr. Thomasino contacted Plaintiff to discuss the results. Plaintiff Dep. at 29:14–22; Gregory Aff. ¶ 11. Plaintiff told Dr. Thomasino that, before the test, he had taken Lorcet, which had been prescribed for him, and Robitussin DAC, a prescription strength cough medicine that had been prescribed for his wife. Plaintiff Dep. at 29:23–30:7, 32:22–33:5; Gregory Aff. ¶ 11. Plaintiff acknowledged that he did not have an active prescription for Robitussin DAC. Plaintiff Dep. at 30:8-10; Gregory Aff. ¶ 11.[1]

---

[1]Plaintiff submits a copy of a letter from Dr. Thomasino to Lab-Corp, dated January 20, 2005, indicating that a specimen collected on December 13, 2004, was mistakenly "collected on a CSX Transportation CCF, but was actually for a donor belonging to Progress Energy," Dr. Thomasino Letter (attached as Ex. L to Plaintiff's Response), along with handwritten notes seemingly indicating that it was Plaintiff's specimen that was incorrectly placed on a CSX form, Handwritten Notes (attached as Ex. M to Plaintiff's Response). The handwritten notes are not dated nor are the attributed to anyone. Nothing in Dr. Thomasino's letter nor the handwritten notes indicates that the results of the drug test placed on the wrong form on December 13, 2004, were incorrect or attributed to the wrong donor.

Plaintiff also asked his family physician, Dr. James S. Garner, to contact Dr. Thomasino. Plaintiff Dep. at 33:17–34:2. Dr. Garner explained to Dr. Thomasino that Plaintiff had taken a dose of his wife's Robitussin DAC the night before the drug test. Plaintiff Dep. at 34:5–25; Dr. Garner Letter (attached as Ex. 6 to Defendant's Motion); Gregory Aff. ¶ 11.

On December 22, 2004, after conferring with Plaintiff and his physician, Dr. Garner, Dr. Thomasino contacted CP&L and reported the foregoing facts, namely that: (i) Plaintiff had tested positive for opiates–specifically, codeine, (ii) he had spoken with Plaintiff, who claimed that the positive test was caused by his ingestion of his wife's prescription strength cough medicine, Robitussin DAC, (iii) he had received correspondence from Plaintiff's physician, Dr. Garner, who stated that Plaintiff had taken a dose of the Robitussin DAC that Dr. Garner had prescribed for his wife, and (iv) Plaintiff did not have a valid prescription for the medication that he claimed to have ingested. Gregory Aff. ¶ 11; Davis Aff. ¶ 5 (attached as Ex. 7 to Defendant's Motion). Accordingly, Dr. Thomasino sent CP&L a written report, certifying that he had verified that Plaintiff had failed the random drug test by testing positive for the use of a controlled substance—codeine, an opiate. Wilson Dep. at 35:9–36:22; Gregory Aff. ¶ 12; Positive Drug Test Notification (attached as Ex. 8 to Defendant's Motion).

In a subsequent letter from Dr. Garner, dated December 27, 2004, Dr. Garner explained that he had prescribed Robitussin DAC for Plaintiff in the past, and that he had no problem with Plaintiff taking his wife's cough syrup (which was the exact same cough formulation is generic form) since he had used it repeatedly in the past with no problems. Dr. Garner Letter II (attached as Ex. A to Plaintiff's Response).

Under the DOT Policy, a CP&L employee who "[h]as a confirmed positive drug test that is evaluated by the MRO as indicating the use of a controlled substance" commits a "Type 5" violation of the DOT Policy. Gregory Aff. ¶ 13; DOT Policy at Part 3.4.1. Furthermore, a single Type 5

violation results in the termination of the employee's employment. Gregory Aff. ¶ 13; DOT Policy at Part 3.4.2; Davis Aff. ¶ 6. Accordingly, after CP&L received Dr. Thomasino's report, Plaintiff's supervisors were notified that: (i) Plaintiff had failed a drug test, (ii) the failure was a Type 5 violation of the DOT Policy, and (iii) Type 5 violations result in the termination of the employee's employment. Gregory Aff. ¶ 13; Davis Aff. ¶ 5.

Given the length of time that Plaintiff had been employed by CP&L and the claimed reason for the drug test failure, Plaintiff's supervisors considered whether to make an exception to the termination requirement in the DOT Policy. Gregory Aff. ¶ 14; Davis Aff. ¶ 7. In a memo to Lloyd Yates, Ray Davis[2] stated, in part,

> Per company policy for Progress Energy Carolinas, a positive test results in termination. However, I believe the facts of this situation warrant an exception to that policy, and I recommend that we do not terminate Albert Wilson. Rather, I suggest that we take alternative action that would require an evaluation to insure that Albert is fit to return to duty, return Albert to normal duties, and perform follow up testing to insure that Albert is in compliance with Company policy concerning use of controlled substances. . . . [I]n this case, there is no indication that Albert is abusing codeine, rather, the facts indicate that he is not abusing codeine. He made an error in taking the cough syrup prescribed for his wife. And, while ignorance does not relieve him of his accountability, I do not think that we should terminate him for this error.

Ray Davis Memo (attached as Ex. N to Plaintiff's Response). Lloyd Yates[3] sent an email to Robin Rowan stating, "I support Ray and Albert on this issue. I believe this warrants an exception and is not the basis of our policy. I will discuss with Fred next week." Lloyd Yates' Email (attached as Ex. O to Plaintiff's Response).[4] Ultimately, however, they declined to make such an exception, concluding that the termination requirement in the DOT Policy should be uniformly applied to all employees.

---

[2]Ray Davis supervised Scott Filby, who was Plaintiff's Supervisor. Davis Aff. ¶ 4.

[3]Lloyd Yates was Ray Davis' Supervisor. Id.

[4]The record does not indicate the positions held by Robin Rowan or "Fred."

Gregory Aff. ¶ 14; Davis Aff. ¶ 8. Accordingly, CP&L terminated Plaintiff's employment on January 10, 2005, because he failed a random drug test in violation of the DOT Policy. Plaintiff Dep. at 42:11–24, 57:21–25; Gregory Aff. ¶¶ 14, 21; Davis Aff. ¶¶ 8, 12; Filby Aff. ¶¶ 4, 7 (attached as Exhibit 9 to Defendant's Motion). Plaintiff's supervisors aver that race, age, and alleged disability were not considered, in any way, in connection with the decision to terminate Plaintiff's employment, and his employment was not terminated because of his race, age, or alleged disability. Gregory Aff. ¶ 21; Davis Aff. ¶ 12; Filby Aff. ¶ 7.

Since at least 2002, CP&L has terminated the employment of every CP&L employee who has failed a drug test that was administered under the DOT Policy. Gregory Aff. ¶ 15; Davis Aff. 9; see also Plaintiff Dep. at 58:1–60:16. Since 2002, ten employees, in addition to Plaintiff, have failed drug tests administered under the DOT Policy, and CP&L has terminated the employment of each such employee, none of whom was regarded as or known to be disabled by CP&L: Employee C (White; DOB 1/14/61), Employee D (White; DOB 12/11/1953), Employee E (White; DOB 9/23/80), Employee F (White; DOB 1/10/71), Employee G (White; DOB 10/24/61), Employee H (White; DOB 5/9/78), Employee I (White; DOB 3/16/63), Employee J (White; DOB 6/22/65), Employee K (White; DOB 1/11/75), and Employee L (White; DOB 11/23/59). Gregory Aff. ¶¶ 16, 18, 19; see also Plaintiff Dep. at 58:1–60:16. In fact, just six months before Plaintiff failed a random drug test, Employee C (White; DOB 1/14/61) failed a random drug test, claiming, like Plaintiff, that the failure was caused by his ingestion of his wife's prescribed medication, and his employment also was terminated, notwithstanding the excuse provided. Gregory Aff. ¶ 17; see also Plaintiff Dep. at 58:19–25.

**IV.    STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials

of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V. DISCUSSION

Plaintiff asserts that he was terminated based upon his race, age, and/or alleged disability. Collectively, Title VII, the ADEA, and the ADA prohibit employers from discharging employees because of their race, age, or disabilities. 42 U.S.C. § 2000e-2(a) (Title VII—race); 29 U.S.C. § 623(a) (ADEA—age); 42 U.S.C. § 12112(a) (ADA—disability). To establish a claim of intentional discriminatory discharge under Title VII, the ADEA, or the ADA, a plaintiff may use either of two methods of proof: (i) direct or circumstantial evidence that discrimination motivated the discharge or (ii) evidence that the defendant's articulated reason for the discharge was merely a "pretext" for discrimination. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284-86 (4th Cir. 2004) (en banc) (affirming summary judgment for employer on discriminatory discharge claims under Title VII and the ADEA); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 196 (4th Cir. 1997) (affirming summary judgment for employer on discriminatory discharge claims under the ADA and the ADEA).

Plaintiff has not presented any direct evidence of discrimination and, thus, must proceed with the pretext method of proof. In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)[5], the Supreme Court set forth a burden-shifting scheme for proving cases of intentional discrimination

---

[5]The McDonnell Douglas analysis was refined in St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993), and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

under Title VII.[6]  Under McDonnell Douglas, Plaintiff has the initial burden of establishing a prima facie case of discrimination.  Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002).  Plaintiff establishes a prima facie case of discrimination by showing (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) other employees who are not members of the protected class did not suffer the adverse employment action. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir.2001).  The fourth element can be established by presenting evidence raising an inference of discrimination.  See Miles v. Dell, Inc., 429 F.3d 480, 486-87 (4th Cir. 2005); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n.2 (4th Cir. 2001)(citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)).

Once Plaintiff has established a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the denial of the promotion.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 ((1981).  This is merely a burden of production, not of persuasion.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)(citing Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a

---

[6]The causation and burden-shifting standards applicable in Title VII cases are also applicable in cases brought pursuant to the ADA and the ADEA.  See Ennis v. Nat'l Assoc. Of Business and Educ. Radio, 53 F.3d 55, 58 (4th Cir.1995) (ADA); Goldberg v. B. Green & Co., 836 F.2d 845, 849 (4th Cir. 1988) (ADEA).

preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

Defendant assumes, without conceding, that Plaintiff can establish a prima facie case of discrimination with respect to his race and age discrimination claims. However, it argues that Plaintiff has failed to present evidence that he is a member of a protected class under the ADA because he has failed to present evidence that he had a disability at the time he was discharged.

The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (2) being regarded as having such an impairment, or (3) having a record of such an impairment. 42 U.S.C. § 12102(2); Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702-03 (4th Cir.2001). Plaintiff proceeds only under the first prong, arguing that he has a physical impairment that substantially limits one or more major life activities.

In his affidavit filed in Response to Defendant's Motion for Summary Judgment, Plaintiff asserts that he has been diagnosed with severe degenerative joint disease of both knees, chronic lung disease, and degenerative disc disease. Plaintiff Aff. at p.1. He avers that "he will not be able to do the normal things in life, without having shortness of breath, pain in my legs, and pain in my back." Id. at p.2. Plaintiff attaches a letter from Dr. Garner, dated April 28, 2008, in which Dr. Garner notes that Plaintiff was determined to have tuberculosis of the bone in 1988 and "moderate spinal stenosis

at the L4-L5 level and degenerative disc disease with a diffuse disc bulge at L3-L4" in 1998. Dr. Garner Letter III (attached as Ex. B to Plaintiff's Response). Plaintiff also attaches medical records which document a chronic cough and severe degenerative joint disease in his knees. See Exhibits C, D, F and G attached to Plaintiff's Response. On August 17, 2004, Plaintiff's doctor wrote a note stating "Albert has severe degenerative joint disease of both knees. He will not be able to climb or do excessive walking. Thank you." McLeod Family Medicine Medical Record (attached as Ex. C to Plaintiff's Response).

The mere diagnosis of an impairment is insufficient to establish a disability. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197, 122 S. Ct. 681, 691, 151 L. Ed. 2d 615, 630-31 (2002). Instead, a plaintiff must prove that he is disabled by offering evidence of the effect that the impairment has on his activities, and the court must make an "individualized assessment" of those effects. Id. at 198-99, 122 S. Ct. at 692, 151 L. Ed. 2d. at 631-32. A plaintiff must provide medical evidence, not just subjective opinion, of the effect that the impairment has on her activities. See, e.g., Pollard v. High's of Baltimore, 281 F.3d 462, 469-70, n.3 (4th Cir. 2002); Stewart v. Weast, 228 F. Supp. 2d 660, 662 (D. Md. 2000).

The evidence submitted by Plaintiff that his impairments substantially limit one or more major life activities is limited to Plaintiff's own affidavit, in which he states that he cannot do the normal things in life without shortness of breath and pain in his knees and back, one doctor's note in which Dr. Garner states that Plaintiff will not be able to climb or do excessive walking, and his deposition testimony where he states that his conditions affected his ability to climb, lift, stand, bend, and breathe. Plaintiff Dep. at 105:10-110:9. Plaintiff affidavit and deposition testimony is merely his subjective opinion and not medical evidence. Furthermore, "an inability to walk long distances

or climb stairs does not in itself substantially limit the person's ability to walk within the meaning of the ADA." Stewart v. Weast, 228 F.Supp.2d 660, 662 (D.Md.2002) (citing Blanton v. Winston Printing Co., 868 F.Supp. 804 (M.D.N.C.1994); Nedder v. Rivier College, 944 F.Supp. 111 (D.N.H.1996); Banks v. Hit or Miss, Inc., 996 F.Supp. 802 (N.D.Ill.1998)). This evidence is insufficient to establish that Plaintiff has a disability as defined by the ADA. Thus, Plaintiff has failed to establish a prima facie case with regard to his claim of disability discrimination.[7]

Even if Plaintiff has established a prima facie case of discrimination on any of his claims, Defendants have offered a legitimate, nondiscriminatory reason for his discharge, that is, that fact that he failed the random drug test, and Plaintiff has failed to present sufficient evidence to establish that his failure of the drug test was pretext for a discriminatory reason.

Plaintiff asserts in his deposition that CP&L received Explanation of Benefits forms (EOBs) from BlueCross BlueShield of North Carolina in September of 2004, which contained insurance benefit information. Plaintiff Dep. at 52:4-20, 127:3-15; 128:2-5, 131:7-132:23. Plaintiff claims that CP&L used the information in the EOBs "under the pretext in to my discharge, looking at what I was costing the company—what I was costing them [a]nd them—and—and my age was I worth keeping." Id. at 13614-21. However, each of Plaintiff's supervisors averred that no EOBs were reviewed or considered in connection with the termination of Plaintiff's employment and that they never saw any such EOBs.

Plaintiff also asserts in his affidavit that he was the only black employee on his team, and he was the only employee to be subjected to the random drug testing three times in 2004. Plaintiff Aff.

---

[7]It does not appear that Plaintiff alleges CP&L regarded him as having a disability. However, even if he has, for the reasons discussed below, his claim of discrimination based upon a disability still fails.

at p. 4. However, CP&L hired an unaffiliated third-party to administer the drug tests, including randomly selecting CP&L employees for drug testing under the DOT Policy, conducting the drug testing, and providing a qualified MRO to review, interpret, and report the test results. Thus, CP&L was not involved in choosing the employees that would be subjected to the random drug test other than providing the third-party administrator with the names of employees subject to the DOT Policy requiring random drug testing.

Furthermore, although two of Plaintiff's supervisors, Ray Davis and Lloyd Yates, supported Plaintiff's position regarding the reasons for the positive drug test and recommended that he not be terminated, both of those individuals submitted affidavits explaining they ultimately decided the policy requiring termination for a positive drug test should be applied uniformly across the board. Thus, Plaintiff was not excepted from that policy. Each of CP&L's employees that have failed the drug test since at least 2002 have been termination pursuant to the policy. Plaintiff simply fails to present sufficient evidence that his termination for failing the drug test was pretext for a discriminatory reason based upon race, age or disability.

In sum, there is no evidence whatsoever that the drug testing procedure was improper. It was conducted by an outside source and CP&L had no involvement in selecting the employees to take the drug test, testing those employees, or reviewing and interpreting the results of the test. Additionally, it is undisputed that ten other employees who failed the drug test, including one in a situation almost identical to that of Plaintiff, have also been terminated from employment. Regardless of this Court's opinion of whether Plaintiff's termination was fair, it is outside the Court's province to decide "whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir.2000) (quoting and citing DeJarnette v. Corning, Inc., 133 F.3d 293, 299(4th Cir.1998). "[T]his Court does not sit as a kind of

super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...." DeJarnette, 133 F.3d at 299. There is no indication that Plaintiff's termination was in violation of Title VII, the ADEA, or the ADA. Thus, summary judgment is proper.

## IV. CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 94) be granted and this case dismissed.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 20, 2009
Florence South Carolina

**The parties' attention is directed to the important notice on the attached page.**